IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ERIC WARE, and YUMBA LASUMBA**, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil No. **04-925-WDS** |
| | ) |
| **JASON GARNETT, and** | ) |
| **CHAPLAIN LOVE,** | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to Judge William D. Stiehl pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Before the Court is Plaintiff Ware's Motion for Summary Judgment. **(Doc. 79).** Plaintiff filed a memorandum in support, which is accompanied by exhibits. **(Doc. 80).** Defendants filed a response in opposition. **(Doc. 81).** Plaintiff then filed a reply. **(Doc. 82)**.

### Nature of Plaintiff's Claim

Both plaintiffs are prisoners in the custody of the Illinois Department of Corrections. They are members of the Muslim faith, and they bring this suit under **42 U.S.C. §1983**, alleging violation of their First Amendment right to practice their religion at Lawrence Correctional Center. (Both plaintiffs are now assigned to other institutions.) Their claims are similar, but not identical. The instant motion is filed by Ware only. Ware states that he was at Lawrence from September, 2004, to April, 2005. **See, plaintiff's affidavit, attached to Doc. 80.**

On preliminary review, the court construed Ware's First Amendment claim to include allegations that he has been denied a Halal diet and a prayer rug; that Muslim inmates are not

-1-

allowed to congregate for prayer services, as other faith groups are; that he is prevented from wearing his religious cap; that he was forced to forego the Ramadan fast because the evening meal provided to those participating in the fast was nutritionally inadequate; and that he was restricted from teaching other inmates Arabic.  **See, Doc. 38, p.2.**

## Standard for Summary Judgment

Summary judgment is appropriate under **Fed.R.Civ.P. 56** where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  **Fed.R.Civ.P. 56(c);  see** *Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).**  The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. **See,** *Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986).** Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial.  *Johnson v. City of Fort Wayne***, 91 F.3d 922, 931 (7th Cir. 1996).**

Even in the absence of a dispute as to the material facts, the moving party must demonstrate that it is entitled to judgment as a matter of law.  "Thus, even where many or all of the material facts are undisputed, the court still must ascertain that judgment is proper 'as a matter of governing law.' [internal citations omitted]"  *Johnson v. Gudmundsson***, 35 F.3d 1104, 1112 (7th Cir. 1994).**

Plaintiff is a *pro se* inmate, and his pleadings must be liberally construed.  *Duncan v. Duckworth***, 644 F.2d 653, 655 (7th Cir.1981).**

## Analysis

Ware sets out some facts which he contends are undisputed. The facts that are relevant to his claim, as opposed to plaintiff Lasumba's claim, are set out below, using the numbers assigned to them in the motion to avoid confusion:

2. Defendants refused to provide plaintiff with a religious diet known as a Halal diet;

3. Defendants refused to issue plaintiff a Sunni (prayer) met.

4. Defendants refused to allow plaintiff to wear his Kufi (religious headgear) in places other than his cell or place of worship.

5. Ware was in segregation during the month of Ramadan in 2004, and he was forced to forego the fast because he was "malnutritiously fed."

6. Ware was prevented from teaching the Arabic language.

7. Defendants denied all of plaintiff's grievances related to the above items.

Defendants agree to all of the above, with the exception of number 5. However, they contend, correctly, that the existence of the above facts do not establish that Ware's First Amendment rights have been violated by defendants.

Plaintiff's arguments are predicated upon a misunderstanding of summary judgment procedure. He cites **Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986)** for the proposition that a party can prevail on summary judgment by showing that the other party has no evidence "on an issue on which the party has the burden of proof." **Doc. 80, p.2**. Here, *plaintiff* - the movant - has the burden of proof at trial; he cannot shift the burden of proof on to defendants and require them to disprove his claim by filing a motion for summary judgment.

Even in the absence of disputed facts, the movant must demonstrate that he is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317,**

**322, 106 S.Ct. 2548, 2552 (1986).** Plaintiff has not done so here.

The First Amendment does not guarantee a prison inmate the right to practice each and every tenet of his religion to the fullest. Rather, his constitutional right to practice his religion may be restricted by the fact of confinement and the needs of the penal institution. ***See Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125, 97 S. Ct. 2532, 2537-2538 (1977).** "A prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion." ***Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996).** "[A]n inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests. ***Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005)**. Prison regulations or policies that impinge on an inmate's First Amendment rights are valid if they are reasonably related to a legitimate penological interest. ***Shaw v. Murphy*, 532 U.S. 223, 223, 121 S. Ct. 1475, 1476 (2001)**; ***Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261 (1987).**

In addition, plaintiff must show that the individuals whom he has named as defendants are personally responsible for the constitutional violations which he alleges. Liability under Section 1983 is personal. This means that plaintiff must show that a defendant personally caused or participated in the violation of his constitutional rights in order to prevail against that defendant. ***Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)**; ***Johnson v. Snyder*, 444 F.3d 579, 583-584 (7th Cir. 2006).**

## Halal Diet

The fact that Ware has not been provided with a Halal diet does not establish that he is entitled to judgment as a matter of law.

Defendants deny that they are personally responsible for the specific diet plan which is

offered by the IDOC.  **See, Doc. 81, p.2**.  Even if Ware had established that these two individual defendants had the authority to determine which diets are offered by the prison system, he would not be entitled to judgment because he has not established that the First Amendment requires that a Muslim inmate be given a Halal diet.

Defendants assert that an appropriate religious diet was offered to plaintiff at Lawrence. Their answer to interrogatory number 8, attached to plaintiff's memorandum in support, states that the IDOC provides a diet that is consistent with Islamic dietary requirements, and that it is cost prohibitive to provide a Halal diet.  Economic concerns are a legitimate penological concern.  ***Al-Alamin v. Gramley***, 926 F.2d 680, 686 (7th Cir. 1991).

Plaintiff's reply takes issue with the contention that providing a Halal diet would be cost prohibitive because defendants denied number 14 of his requests for admissions, which said "Both defendants have thoroughly investigated prices of an Islamic Halal diet for plaintiffs." Denial of this specific contention does not mean that defendants are precluded from taking the position that it would be cost prohibitive to provide the Halal diet.  Even if one or both defendants did not personally investigate the cost of the diet, they can rely on information gathered by other persons on behalf of the IDOC.

The motion does not explain what constitutes a Halal diet.  Plaintiff's affidavit attached to his reply indicates that a Halal diet consists of meat from an animal which has been "properly slaughtered."  **See, affidavit attached to Doc. 82.**  The Seventh Circuit has stated that a Halal diet contains no pork, but that it does include meat that has been specially prepared.  ***Al-Alamin v. Gramley***, **926 F.2d 680, 682 (7rd Cir. 1991)**.  **See also,  *Williams v. Morton*, 343 F.3d 212, 215 (3rd Cir. 2003) ("A Halal, or lawful, diet includes fruits, vegetables, seafood, and meat from herbivorous animals such as cows and chickens that are properly slaughtered.")**

The Seventh Circuit has *not* held that Muslim inmates must be given a Halal diet. Plaintiff misreads ***Al-Alamin, supra***, on this point. In that case, the Seventh Circuit held that the inmates who where allowed to purchase commercially prepared Halal food during Ramadan and for the feast of Eid-Ul-Fitr were not entitled to injunctive relief as they had not demonstrated a constitutional violation. ***Al-Alamin*, 926 F.2d at 684, 686-687.** The case does not hold that Muslim inmates have a constitutional right to receive a Halal diet.

This court's research indicates that no circuit court of appeals has issued a reported opinion holding that Muslim inmates have a First Amendment right to receive a Halal diet. In ***Williams v. Morton*, 343 F.3d 212, 218 (3rd Cir. 2003)**, the Third Circuit held that the constitution permits providing vegetarian meals rather than meals containing Halal meat to Muslim inmates. Plaintiff has not established that his constitutional rights were violated by the lack of a Halal diet.

### Prayer Rug

The claim that defendants have refused to issue him with a prayer rug does not come close to establishing a First Amendment violation. Ware has not alleged or established that defendants prevented him from possessing or using a prayer rug. His "undisputed fact" says that defendants "refused to issue" him a mat. Ware may or may not be constitutionally entitled to use a prayer rug, but he certainly has no right to have the prison system, much less the individual defendants, pay for his religious accessories. ***Cutter v. Wilkinson*, 125 S.Ct. 2113, 2121, footnote 18 (2005).**

### Religious Headgear

Defendants admit that plaintiff is prohibited from wearing his religious headgear except in his cell or during worship services. However, that fact alone does not demonstrate a de facto

First Amendment violation. In *Young v. Lane*, **922 F.2d 370, 375-376 (7th Cir. 1991),** the Seventh Circuit held that a prison regulation which prohibits the wearing of religious headgear (Jewish yarmulke) except in the cell or during services is reasonably related to the legitimate interests of safety and security of the institution. Plaintiff relies in part for support for his motion on the defendants' answers to interrogatories, which he attached to the motion. In their response to the motion, defendants point to their answers to numbers 14 and 15, which state that inmates may wear only state-issued clothing for safety and security reasons, and that these defendants are not personally responsible for that requirement.

### Teaching Arabic

Again, defendants admit that Ware was prohibited from teaching other inmates Arabic, or from preaching in that language. Defendants contend that no one is allowed to lead a religious service in foreign language unless a staff member is able to understand what is said. There are obvious safety and security issues implicated by permitting inmates to use a language that cannot be understood by prison staff. Plaintiff has not established a constitutional violation here.

The court notes that plaintiff's reply refers to a Bureau of Prisons policy of permitting inmates to recite formulaic prayers in a foreign language. Since Ware is in the custody of the IDOC, a Bureau of Prisons policy has no relevance. Further, he is not claiming that he was denied permission to recite formulaic prayers in Arabic; he is claiming that he was prohibited from teaching Arabic to other inmates.

### Not Allowing Muslims to Congregate

Ware argues that defendants have violated his First Amendment rights by not permitting all of the Muslim inmates to congregate in one group for worship services. Defendants contend that the Muslims were split into two groups, "north" and "south," because of the large number of

inmates who wanted to attend Muslim services. Plaintiff has not given the court any reason to believe that this arrangement somehow violates his rights.

Plaintiff argues that the Christian inmates were treated differently in that they were not required to split into "north" and "south" and that there are more Christian services than Muslim. Defendants respond that there were more Christian services because there were more Christian inmates. This does not violate Ware's rights. The constitution does not require absolute parity among services provided for each different religious sect. See, **Young v. Lane, 922 F.2d 370** at **370; *Al-Alamin*, 926 F.2d at 687-688.**

### Segregation Meals

Lastly, Defendants dispute plaintiff's claim that he was fed non-nutritious meals in segregation in 2004, which forced him to forego the Ramadan fast that year. Defendants have filed the affidavit of Neil Earnest, who has been employed at Lawrence since August, 2005; his affidavit is of no relevance since Ware was transferred out of Lawrence in April, 2005.

Plaintiff's claim on this point is somewhat murky. He has attached a copy of a grievance dated October 18, 2004, which fleshes out his argument on this point. The grievance says that he should have been given a double portion for his meal at the end of the day during Ramadan, since he was unable to eat lunch because he was fasting. Thus, his claim appears to be not that the meals he was given were themselves not nutritionally adequate, but that missing lunch would cause his overall diet to be inadequate.

The constitution mandates that prison inmates be given a nutritionally adequate diet, and an inmate's rights are violated where he is forced to choose between receiving adequate nutrition and practicing his religion. **See, *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990)**. However, there is no reason to believe from the record now before the court that missing lunch during the

month of Ramadan would have resulted in plaintiff becoming malnourished. Plaintiff has not established that he is entitled to judgment as a matter of law on this point either.

### Recommendation

This Court recommends that Plaintiff Ware's Motion for Summary Judgment **(Doc. 79)** be **DENIED.**

If this recommendation is accepted in its entirety, Ware's claim that his First Amendment rights were violated in that he was denied a Halal diet and a prayer rug; that Muslim inmates are not allowed to congregate for prayer services, as other faith groups are; that he is prevented from wearing his religious cap; that he was forced to forego the Ramadan fast in 2004 because the evening meal provided to those participating in the fast was nutritionally inadequate; and that he was restricted from teaching other inmates Arabic; will remain pending.

Objections to this Report and Recommendation must be filed on or before **July 10, 2007.**

 **Submitted:  June 20, 2007.**


 **s/ Clifford J. Proud**
 **CLIFFORD J. PROUD**
 **U. S. MAGISTRATE JUDGE**