IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ERIC WARE, and YUMBA LASUMBA**, )
)
       Plaintiffs, )
)
v. ) Civil No. **04-925-WDS**
)
**JASON GARNETT, and** )
**CHAPLAIN LOVE,** )
)
       Defendants. )

## REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to Judge William D. Stiehl pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Before the Court is Defendants' Motion for Summary Judgment. **(Doc. 90).** Defendants filed a memorandum in support, which is accompanied by exhibits, including affidavits. **(Doc. 91)**. Defendants served the notice required by *Lewis v. Faulkner*, **689 F.2d 100, 102 (7th Cir. 1982)**. Plaintiff Ware filed a response in opposition. **(Doc. 98)**. Plaintiff Lasumba did not file a response.

### Nature of Plaintiff's Claim

Both plaintiffs are prisoners in the custody of the Illinois Department of Corrections. They are members of the Muslim faith, and they bring this suit under **42 U.S.C. §1983**, alleging violation of their First Amendment right to practice their religion at Lawrence Correctional Center. (Ware is now assigned to other institution, and Lasumba has been released from the IDOC. See, **Doc. 101**.) Defendant Garnett was the warden of Lawrence at the relevant time, and defendant Love was a chaplain. Plaintiffs' claims are similar, but not identical.

On preliminary review, the court construed the claims set forth in the amended complaint **(Doc. 34)** as follows:

> They allege that Defendants have denied them a Halal meal (¶ 1), a prayer rug (¶ 2), congregational prayer services (¶ 3), and religious head wear (¶ 9). Lasumba alleges that he was allowed only 10 minutes to eat during Ramadan (¶ 5), while Ware states that he was forced to forego the Ramadan fast because the evening meal provided to Ramadan participants was nutritionally inadequate (¶ 10). Lasumba is upset that his religious medallion was confiscated (¶ 4), while Ware contends that he should be allowed to teach Arabic to fellow Muslims (¶ 12).

 See, Doc. 38, p.2.

## Standard for Summary Judgment

Summary judgment is appropriate under **Fed.R.Civ.P. 56** where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).** The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. **See,** *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986).** Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. ***Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).**

Even in the absence of a dispute as to the material facts, the moving party must demonstrate that it is entitled to judgment as a matter of law. "Thus, even where many or all of the material facts are undisputed, the court still must ascertain that judgment is proper 'as a matter of governing law.' [internal citations omitted]" ***Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994).**

Plaintiffs are pro se inmates, and their pleadings must be liberally construed. ***Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981).**

### Analysis

The court has construed plaintiffs' claims as arising under the First Amendment. The First Amendment does not guarantee a prison inmate the right to practice each and every tenet of his religion to the fullest. Rather, his constitutional right to practice his religion may be restricted by the fact of confinement and the needs of the penal institution. ***See Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125, 97 S. Ct. 2532, 2537-2538 (1977).** "A prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion." ***Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996).** "[A]n inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests. ***Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005)**. Prison regulations or policies that impinge on an inmate's First Amendment rights are valid if they are reasonably related to a legitimate penological interest. ***Shaw v. Murphy*, 532 U.S. 223, 223, 121 S. Ct. 1475, 1476 (2001)**; ***Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261 (1987).**

In his response, Ware makes some references to the "least restrictive" standard under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §2000cc. That analysis has no application here. RLUIPA was not plead in the amended complaint, and the court on preliminary review construed plaintiffs' claims as arising under the First Amendment, and not under RLUIPA.

In addition, a plaintiff must show that the individuals whom he has named as defendants are personally responsible for the constitutional violations which he alleges. Liability under

Section 1983 is personal. This means that plaintiff must show that a defendant personally caused or participated in the violation of his constitutional rights in order to prevail against that defendant. ***Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)**; ***Johnson v. Snyder*, 444 F.3d 579, 583-584 (7th Cir. 2006).**

As plaintiffs are not attorneys, each plaintiff may file pleadings only on behalf of himself. ***Lewis v. Lenc-Smith Manufacturing Company*, 784 F.2d 829, 830 -831 (7th Cir. 1986)**. Each plaintiff may assert the violation of his own rights only. ***Massey v. Helman*, 196 F.3d 727, 739 (7th Cir. 1999).**

Both plaintiffs claim that they have been denied a Halal diet. Defendants contend that they are entitled to judgment on this claim because the IDOC does not provide a Halal diet; rather, it provides a vegetarian diet, which is an acceptable diet for Muslims.

According to defendants' affidavits, they are not responsible for deciding which diets will be available in the IDOC correctional facilities. Someone other than these two defendants has determined that a Halal diet is too expensive, so it is not offered in the IDOC. Love determines whether a particular inmate qualifies for a religious diet, but he cannot authorize a diet that is not served by the IDOC. Muslim inmates can ask for the vegetarian diet. Affidavits of Garnett and Love, attached to **Doc. 91**.

Plaintiffs testified that a Halal diet includes meat which has been slaughtered in a particular manner and prayed over. Ware deposition, p. 11; Lasumba deposition, pp. 9-10, attached to Doc. 91. The Seventh Circuit has stated that a Halal diet contains no pork, but that it does include meat that has been specially prepared. ***Al-Alamin v. Gramley*, 926 F.2d 680, 682 (7th Cir. 1991)**. **See also, *Williams v. Morton*, 343 F.3d 212, 215 (3rd Cir. 2003) ("A Halal, or lawful, diet includes fruits, vegetables, seafood, and meat from herbivorous**

**animals such as cows and chickens that are properly slaughtered.")**

Neither plaintiff has refuted the facts set forth in the defendants' affidavits. Plaintiff Ware attached a copy of defendants' answer to interrogatory number 8, which states that the IDOC provides a diet that is consistent with Islamic dietary requirements, and that it is cost prohibitive to provide a Halal diet. This interrogatory answer supports defendants' position.

Neither plaintiff requested a vegetarian diet in the relevant time period. Ware deposition, p. 23; Lasumba deposition, p.11.

The Seventh Circuit has *not* held that Muslim inmates must be given a Halal diet. In *Al-Alamin, supra*, the Seventh Circuit held that inmates who where allowed to purchase commercially prepared Halal food during Ramadan and for the feast of Eid-Ul-Fitr were not entitled to injunctive relief as they had not demonstrated a constitutional violation. *Al-Alamin*, **926 F.2d at 684, 686-687.** The case does *not* hold that Muslim inmates have a constitutional right to receive a Halal diet.

This court's research indicates that no circuit court of appeals has issued a reported opinion holding that Muslim inmates have a First Amendment right to receive a Halal diet. In *Williams v. Morton*, **343 F.3d 212, 218 (3rd Cir. 2003)**, the Third Circuit held that the constitution permits providing vegetarian meals rather than meals containing Halal meat to Muslim inmates. Defendants have established that an acceptable religious diet is available for Muslims, and that the Halal diet is cost prohibitive. Economic concerns are a legitimate penological concern. *Al-Alamin v. Gramley*, **926 F.2d 680, 686 (7th Cir. 1991).**

Because the lack of Halal diet did not violate plaintiffs' constitutional rights, and because neither defendant was personally responsible for the decision not to offer a Halal diet in the IDOC, defendants are entitled to summary judgment on this claim.

Both plaintiffs claim that they have been denied a specific type of prayer rug, called a Sunni mat. The Sunni mat was described by plaintiff Ware as a "giant prayer rug." The only difference between a prayer rug and the Sunni mat is the size. Inmates at Lawrence were allowed to have prayer rugs which they could use in their cells. The large Sunni mat would go in the chapel. Ware deposition, pp. 12-14.

Defendant Love's affidavit also states that inmates at Lawrence are allowed to have prayer rugs. Thus, the record establishes that the Sunni mat is the same as a prayer rug, only bigger, and that inmates at Lawrence were allowed to have prayer rugs.

Ware's response suggests that his rights were violated because defendants provided "religious items" for other faith groups, but would not buy a Sunni mat for the Muslims. This does not come close to establishing a First Amendment violation. Inmates do not have a right to have the prison system, much less the individual defendants, pay for their religious accessories. ***Cutter v. Wilkinson*, 125 S.Ct. 2113, 2121, footnote 18 (2005).** The constitution does not require absolute parity among services provided for each different religious sect. See, ***Young v. Lane*, 922 F.2d 370** at **370;** *Al-Alamin*, **926 F.2d at 687-688.**

Both plaintiffs claim that defendants have violated their First Amendment rights by not permitting all of the Muslim inmates to congregate in one group for worship services. Garnett's affidavit states that limiting the number of inmates at a service is necessary to prevent gang or violent activity that could overwhelm the security staff. Love's affidavit explains that a call-pass system was used whereby inmates would sign up in advance to attend a religious service. No more than 50 inmates were allowed to sign up for a service, as it had been determined that a greater number would create a safety and security risk because of the size of the chapel and the possibility that a larger number of inmates could overwhelm security staff. During the relevant

period, more than 50 inmates were signing up for the Muslim service, so a second service was added. Inmates were assigned to a particular service according to the location of their housing assignment.

Defendants are entitled to judgment on this claim. Plaintiffs do not have a First Amendment right to attend a prayer service attended by all Muslim inmates at the same time. Were testified that Muslims are supposed to come together for prayer service; he also testified that, although the Muslims were divided into two groups, they were, in fact, allowed to have group services. Ware deposition, pp. 17-18. Ware suggests that Christian inmates were not divided as the Muslims were, but this does not violate his rights. The constitution does not require absolute parity among services provided for each different religious sect. See, **Young v. Lane**, 922 F.2d 370 at 370; **Al-Alamin**, 926 F.2d at 687-688. Limiting the number of inmates at a service to 50 is reasonably related to legitimate penological interests. **Shaw v. Murphy, 532 U.S. 223, 223, 121 S. Ct. 1475, 1476 (2001)**; **Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261 (1987).**

Both plaintiffs complain that they are not allowed to wear religious headgear except in their cells or during worship services. Defendants' affidavits states that inmates can only wear state-issued clothing outside of their cells or at worship services. That rule applies to inmates in general, and not just Muslims. Ware testified that the rule is in effect in the whole IDOC. (Ware has been assigned to a number of IDOC facilities.) Ware deposition, p. 20. The rule does not violate the constitution. In **Young v. Lane, 922 F.2d 370, 375-376 (7th Cir. 1991),** the Seventh Circuit held that a prison regulation which prohibits the wearing of religious headgear (Jewish yarmulke) except in the cell or during services is reasonably related to the legitimate interests of safety and security of the institution.

The next issue is that Lasumba alleges that he was allowed only ten minutes to eat during Ramadan. Defendant Garnett's affidavit states that inmates are allowed sufficient time to eat, and that the rule is that inmates are allowed ten minutes from the time the last inmate receives his tray in which to eat. Lasumba has not responded to the motion.

The record before the court establishes that the ten-minute rule was applied across the board to all inmates, and that the purpose of the rule was to help maintain order in the cafeteria. Garnett affidavit, ¶4. This court was unable to locate any authority for the proposition that the constitution mandates that inmates be allowed more than ten minutes in which to consume a meal. While it might be more enjoyable to linger over a meal, prisons are not required to provide "the amenities, conveniences and services of a good hotel." ***Harris v. Flemming*, 839 F.2d 1232, 1235 (7th Cir. 1988).**

Next, Ware claims that he was forced to forego the Ramadan fast in 2004 because the evening meal provided to Ramadan participants was nutritionally inadequate. Ware testified that Ramadan was sometime between October 4 and November 4 in that year. Around the fourth day of Ramadan, he was sent to disciplinary segregation for thirty days. If he were observing the fast, he would be given breakfast and a late dinner tray, but his lunch would be withheld. Ware's theory is that he should have been given extra food on his dinner tray, to make up for the fact that he did not have lunch during the day. Ware deposition, pp. 21-23.

It is true that a prison has an obligation to provide nutritionally adequate food. ***Antonelli v. Sheahan*, 81 F.3d 1422, 2431 (7th Cir. 1996)**. Love's affidavit states that the two meals provided to inmates who were participating in the Ramadan fast are nutritionally adequate. The affidavit states that the two meals "fulfill their nutritional needs and enable the inmate to observe the Ramadan fast." Love affidavit, ¶3. The only evidence to controvert this fact is Ware's

affidavit, in which he states that, during Ramadan in 2004, "I was served an inadequate and unnutritional [sic] meal." See, affidavit dated July 23, 2007, attached to **Doc. 98.** This is insufficient to create a genuine issue of fact for trial. Even assuming that plaintiff received an inadequate meal on occasion, that is not enough to show a constitutional violation.

Ware's basic premise is flawed, as the constitution does not secure him a right to be fed the equivalent of three meals a day. The fact that an inmate misses some meals does not per se violate the constitution; rather, the court must "assess the amount and duration of the deprivation." ***Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999).** Plaintiff is only constitutionally entitled to "the minimal civilized measure of life's necessities." ***Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2342 (1991).** There are, no doubt, many free persons in this country who routinely consume fewer than three meals a day. The constitution mandates that prison inmates be given a nutritionally adequate diet, and an inmate's rights are violated where he is forced to choose between receiving adequate nutrition and practicing his religion. **See, *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990)**. However, where, as here, defendants have produced evidence that the two meals provided for inmates during Ramadan fulfill the inmates' nutritional needs, the fact that plaintiff did not receive a double portion at the evening meal does not violate the constitution.

Lasumba claims that a religious medallion was confiscated from him. Exhibit G attached to the amended complaint, **Doc. 34**, indicates that the medal was confiscated because not a solid color. According to Garnett's affidavit, ¶7, only religious medallions of a solid gold or silver color are allowed in order to restrict items that might be in gang colors. That is a legitimate penological interest and does not violate the First Amendment.

Lastly, plaintiff Ware complains that he was prohibited from teaching other inmates

Arabic, or from preaching in that language. Defendants' affidavits state that inmates are not allowed to lead a religious service in foreign language. The reason for the rule is to prevent communications that might jeopardize the security and safety of the prison.

There are obvious safety and security issues implicated by permitting inmates to use a language that cannot be understood by prison staff. Preventing plaintiff from speaking in or teaching Arabic is a reasonable restriction and does not violate his First Amendment rights.

The court notes that plaintiff's response refers to a Bureau of Prisons policy of permitting inmates to recite formulaic prayers in a foreign language. Since Ware is in the custody of the IDOC, a Bureau of Prisons policy has no relevance. Further, he is not claiming that he was denied permission to recite formulaic prayers in Arabic; he is claiming that he was prohibited from speaking in Arabic and teaching Arabic to other inmates.

### **Recommendation**

This Court recommends that Defendants' Motion for Summary Judgment **(Doc. 90)** be **GRANTED** in all respects. Judgment should be entered in favor of both defendants on all claims.

If this recommendation is accepted in its entirety, no claims will remain pending.

Objections to this Report and Recommendation must be filed on or before **March 17, 2008.**

**Submitted:  February 27, 2008.**

> **s/ Clifford J. Proud**
> **CLIFFORD J. PROUD**
> **U. S. MAGISTRATE JUDGE**