# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC WARE and YUMBA LASUMBA, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 04-CV-925-WDS |
| | ) |
| JASON GARNETT, and, | ) |
| TIMOTHY LOVE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is are two Reports and Recommendations of United States Magistrate Judge Clifford J. Proud (Docs. 109 and 110). The magistrate recommends that plaintiff Ware's motion for a temporary restraining order (Doc. 104) be denied and that defendants' motion for summary judgment be granted (Doc. 90). Plaintiff Eric Ware has filed a joint objection to both recommendations (Doc. 111) a supplemental objection (Doc. 112) and an affidavit (Doc. 113). Plaintiff Lasumba has not filed any objections.

Therefore, the Court **ADOPTS** the Recommendation as to plaintiff Lasumba's claims and **GRANTS** defendants' motion for summary judgment on all claims of plaintiff Lasumba.

With respect to plaintiff Ware's objections, pursuant to 28 U.S.C. § 636(b)(1)(B), the Court will make a de novo review of those portions of the recommendation to which objections were made.

## BACKGROUND

Plaintiff Eric Ware is a prisoner in the custody of the Illinois Department of Corrections. He is a member of the Muslim faith and was, at the time in question, housed at Lawrence

Correctional Center.[1] Ware asserts that defendant Garnett, who was the Warden of Lawrence at the time in question, and defendant Love, who was the chaplain, violated his First Amendment right to practice his religion. Specifically, the plaintiff alleges that the defendants denied him a Halal meal, a prayer rug, congregational prayer services and religious head ware. Ware alleges that he was forced to forego Ramadan fast because the evening meal was nutritionally inadequate and that he is not allowed to teach Arabic to fellow Muslims. Plaintiff seeks relief pursuant to 42 U.S.C. §1983 for these alleged constitutional violations.

## **ANALYSIS**

A district court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c): *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). The moving party initially bears the burden to demonstrate an absence of genuine issues of material fact, indicating that judgment should be granted as a matter of law. *See, Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1999) (citing *Celotex*, 477 U.S. at 323). Once a motion for summary judgment has been made and properly supported, however, the nonmovant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. *See, id.* In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor. *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In ruling on a motion for

---

[1]Ware has subsequently been assigned to another institution.

summary judgment, the Court will not resolve factual disputes, weigh conflicting evidence, or make credibility determinations. *See, Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001); *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

The Court has construed plaintiff's claims as those arising under the First Amendment. In his objection to the recommendation, and in his response to the motion for summary judgment, plaintiff Ware asserts that the Court should review this action under the less restrictive standards of the Religious Land Use and Institutionalized Persons Act (RLUIPA). 42 U.S.C. § 2000cc.[2] The plaintiff did not, however, plead the RLUIPA as a basis for his claims of religious violation. The First Amendment, in contrast to the RLUIPA, does not require the accommodation of religious practice and states may enforce neutral rules. *See eg, Employment Division of Oregon v. Smith,* 494 U.S. 872(1990). Although it is true that an inmate's right to freely exercise his religion does not stop at the prison door, that right is not without limitations. *Tarpley v. Allen County, Ind.,* 312 F.3d 895, 898 (7th Cir. 2002). Prison regulations that infringe on an inmate's exercise of his religion are permissible if they are reasonably related to a "legitimate penological objective." *Id.* Therefore, the policy will be upheld if (1) as applied, it is rationally connected to a legitimate government interest; (2) no reasonable alternate means exist for the inmate's vindication of free exercise rights; (3) what is the effect of accommodating the

---

[2]Inmates clearly retain a right to freely exercise their religion. That right, however, is subject to legitimate penological objectives of the state. *Conyers v. Abitz,* 416 F.3d 580, 585 (7th Cir.2005). Ware now attempts to add to his cause of action the claim that defendants violated the RLUIPA, which prohibits prisons that receive federal funding from substantially burdening an inmate's religious exercise unless the step in question is the least restrictive way to advance a compelling state interest. See *Cutter v. Wilkinson,* 544 U.S. 709(2005); *Lindell v. McCallum,* 352 F.3d 1107 (7th Cir.2003). *See also Gonzales v. O Centro Espírita Beneficente União Do Vegetal,* 546 U.S. 418 (2006) (addressing the materially identical provision in the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1). The Court **FINDS** that plaintiff did not seek review under the RLUIPA, but even if he had, his claims would be subject to summary judgment, as the prison policies in this case were based on legitimate penological goals.

3

inmate's rights; and (4) whether there were ready alternatives to the regulation. *Id*.

A good portion of the plaintiff's objections are based on his own views and statements of the situation at the institution. "This [type of evidence, standing alone] is insufficient to create a material dispute that would require a trial." *Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006).

**1.     Halal Diet**

The magistrate judge found that the plaintiff is simply not entitled, under existing Seventh Circuit standards, to a Halal diet.[3] Defendants' affidavits provide that they are not responsible for determining which diets are available in the IDOC correctional facilities. The Halal diet has, apparently, been determined to be too expensive, and therefore, is not offered within the IDOC. Instead, the IDOC provides that Muslim inmates may have a vegetarian diet, which Muslims can request. It is clear from the record that plaintiff Ware did not request a vegetarian diet during the time in question.

In order to sustain a § 1983 claim against the defendants, the plaintiff must establish that the defendants somehow personally caused or participated in the violation of his constitutional rights. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Here, nothing in the record establishes that these defendants were responsible for denying plaintiff a Halal diet. Defendants have further established that there is a reasonable alternative diet, a vegetarian diet, available for Muslims, and that a Halal diet is cost-prohibitive. Plaintiff's claim that he was forced to forego the Ramadan fast because he was not given a proper diet, and did not receive adequate nutrition in his meals is without support. The availability of a vegetarian meal is sufficient to reasonably

---

[3] A Halal diet consists of meat which has been slaughtered in a particular manner and prayed over. See, *Al-Alamin v. Gramley*, 926 F.2d 680, 682 (7th Cir. 1991); *Williams v. Morton*, 343 F.3d 212, 215 (3d Cir. 2003).

4

meet religious needs, and did not violate plaintiff's First Amendment rights. Economic concerns constitute a legitimate penological objective and concern. *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). Therefore, the Court **FINDS** that the plaintiff cannot establish that the defendants violated his constitutional rights by denying him a Halal diet and that the defendants are entitled to summary judgment on this claim.

### 2. Prayer Rug

Plaintiff asserts that he was also denied a specific type of prayer rug, called a Sunni mat. Plaintiff has described the Sunni mat as a large prayer rug, which would go into the chapel. It is clear from the record that inmates at Lawrence are allowed to have prayer rugs in their cells and in chapel, and that the only difference between a Sunni mat and the prayer rugs which are allowed is the size of the rugs. Plaintiff asserts in his objection to the Report and Recommendation that inmates of other faiths are treated more favorably and that the defendants provide religious items to other faiths but not to Muslims. The constitution does not required parity among religions, *Al-Alamin*, 926 F.2d at 687-88, and plaintiff clearly has the opportunity to have and use a prayer rug. Therefore, the Court **FINDS** that plaintiff's religious exercise is not burdened by the denial of a Sunni mat, and the defendants are entitled to judgment on this claim.

### 3. Worship Services

The plaintiff asserts that defendants violated his First Amendment rights by not permitting all Muslims to gather together for worship services in one group. Defendant Garnett's affidavit provides that inmates are limited in numbers at services to prevent gang or violent activity that could overwhelm the security staff. Plaintiff asserts that the institution does

5

not similarly separate the Christians. Plaintiff also notes a difference between defendants' affidavits as to the total capacity of the chapel (Garnett says that it can hold 75, Love states that it can hold 50). Upon review of the record, the Court **FINDS** that the defendants are entitled to judgment on this claim. As stated earlier, the Constitution does not required parity among religions and the act of limiting the number of inmates to not more than 50, which resulted in a second service for Muslims, is reasonably related to legitimate penological concerns relating to safety within the institution. Plaintiff has not shown that those concerns are not valid, therefore, his claim cannot stand. *Shaw v. Murphy*, 532 U.S. 223 (2001).

**4.** **Religious Headgear**

Plaintiff asserts that he was not permitted to wear religious headgear, except in his cell or during worship services. The record reveals that inmates can only wear state-issued clothing while out of their cells. This rule applies to all inmates, not just Muslims. This restriction does not violate the Constitution and is a reasonable restriction imposed on all inmates. Plaintiff's objection to the recommendation is simply that this is not the least restrictive means available. Upon review of the record, the Court **FINDS** that plaintiff claim with respect to headgear is unavailing. The rule regarding non state-issued clothing is uniformly applied. Plaintiff is permitted to wear his headgear during services and in his cell. The legitimate interests relating to security and safety within the institution is a valid basis for these restrictions, and the defendants are entitled to judgment on these claims.

**5.** **Use of and Teaching Arabic**

Finally, plaintiff asserts that he was prohibited from teaching other inmates Arabic and Muslims are not allowed to preach in that language. The record reveals that this restriction is

based on a concern that there may be communications that could jeopardize the safety of the institution because this language is not readily understood by prison staff.[4] Again, the Court finds that this restriction is based upon a legitimate safety need. The plaintiff has not shown that praying and teaching in Arabic is essential to the practice of his faith, therefore, there is no showing of a constitutional violation with this regulation. Therefore, the Court **FINDS** that the defendants are entitled to judgment on this claim as well.

## CONCLUSION

Therefore, the Court **FINDS** that the defendants are entitled to summary judgment on all of plaintiffs' claims. The Court **ADOPTS** the recommendations of the magistrate judge and overrules plaintiff Ware's objections (Docs 109 and 110).

The Court **FINDS** that plaintiff Eric Ware is not entitled to injunctive relief because he cannot support any of the claims that underly this action. Accordingly, Ware's motion for a Temporary Restraining Order (Doc. 104) is **DENIED.**

Defendants' motion for summary judgment (Doc. 90) is **GRANTED** and judgment is entered in favor of defendants Jason Garnett and Chaplain Love and against plaintiffs Eric Ware and Yumba Lasumba on all claims.

Plaintiff Ware's motion for reconsideration (Doc. 96) is **DENIED** as moot.

The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATE:  March 31, 2008**

                                         **s/ WILLIAM D. STIEHL**
                                                   **District Judge**

---

[4] In contrast to Spanish, which staff members are more likely to be able to understand.